**ELLYN I. BANK**
**Attorney At Law**
**225 Broadway, Suite 715**
**New York, New York 10007**

**212-385-1800**
**FAX 212-566-8165**

July 31, 2008

Via ECF & First Class US Mail (Courtesy Copy)

Honorable Thomas P. Griesa
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>*US v. Maldonado, 08 Cr 68-01 (TPG)*</u>

Dear Judge Griesa:

I write in reference to the sentencing of Crusadio Maldonado which is scheduled for August 6, 2008. I respectfully request that the court impose a non-guideline sentence that is as lenient as possible based on a combination of factors including, but not limited to: the fact that before this case he had no criminal record whatsoever, he has acknowledged his guilt in the instant offense, and the crime he pled guilty to, unlawfully using a telephone in connection with the distribution of 50 grams and more of methamphetamine, has a 48 month maximum (which is below the advisory guideline range of 87 to 108 months), and pursuant to 5G1.1(a), because the statutorily maximum sentence is less than the minimum of the Guidelines range, the statutorily authorized maximum sentence of 48 months is the stipulated Guidelines sentence.

## I. Crusadio Maldonado's Background

### A. Family Background

Mr. Maldonado was born on January 25, 1980. His mother, Sabina Renteria, 60, and his father, Cornelio Cervantes-Maldonado, 74, reside in Las Parotas, Mexico. His mother is a housewife and his father is employed as a farmer, but is very ill.

Mr. Maldonado has eight siblings, all with the last name Cervantes: Jose, 43, and Juan, 40, reside in Los Angeles, California, and work in a factory, Antelma, 38, and Fransica, 32, reside in Los Angeles and work in a Chinese restaurant, Nimfa, 34, resides in Los Angeles and is a housewife, Guadalupe, 26, resides in Florida and is employed in a nursery, and Alejandro, 23, resides in Mexico and is a field worker.

Mr. Maldonado's ex-girlfriend, Minerva, 22, is the mother of his daughter, Leslie, 5. Minerva and Leslie reside with her parents in Las Parotas, Mexico.

Mr. Maldonado's current girlfriend is Fausta Lopez, 27. The couple have two sons together: Yordany is 20 months old, and Edison is six months old. Presently, Fausta, who lives and works in Georgia, is very upset about Mr. Maldonado's situation and struggles to support the couple's two boys.   Unfortunately, Edison suffers from asthma.

**B. Personal History**

Mr. Maldonado is a twenty-eight year old Spanish speaking Mexican national who entered this country illegally in February 2005. While his entrance in this country was illegal, he came to the United States to try to find work and make a better life for the family he hoped to have.

Mr. Maldonado graduated in 1999 from Ignacio Lopez Rayon High School in Mexico. Upon entering the United States, Mr. Maldonado settled in Atlanta, Georgia with his cousin. Though his siblings live in California, Mr. Maldonado did not move closer to them because he felt he did not know them well as they left home when he was very young.

Mr. Maldonado does not have fond memories of his early years. Though he was born into a big family, he was born into extreme poverty. As a result, he worked steadily after moving to Atlanta to support himself. His first job in the United States was in construction;

however, as soon as he could he worked several jobs at once in order to earn a living. He worked as a bus boy for a restaurant, a part time cook for another restaurant, and mowed lawns with his cousin.

Mr. Maldonado is in good health. He did use cocaine in 2006, but did not enjoy using the drug and stopped using after six months. He has never had any treatment for drug or alcohol abuse.

## II. Offense Conduct

Mr. Maldonado was arrested on July 25, 2007 and he has remained incarcerated at the Metropolitan Correction Center (MCC) in New York since that date.  Mr. Maldonado was charged with conspiracy to distribute and possess with intent to distribute 50 grams and more of methamphetamine, in violation of 21 USC §812, 841(a)(1) and 841(b)(1)(A).

On March 11, 2008, Mr. Maldonado pled guilty to unlawfully, knowingly and intentionally using a telephone in connection with the distribution of, and possession with intent to distribute, 50 grams and more of methamphetamine, in violation of 21 USC § 812, 841(a)(1) and 841(b)(1)(A) pursuant to a plea agreement with the government.  The plea agreement contained the following stipulations.

1.  The base offense level is 32, pursuant to 2D1.1(a)(3) and (c)(4).

2. Three points are deducted because he accepted responsibility for his actions in a timely fashion, pursuant to §3E1.1(a) and (b).

3.  Mr. Maldonado has zero criminal history points; therefore, is in a criminal history category of I.

5.  At a resulting offense level of 29 and a criminal history of I, his advisory sentence range is 87 to 108 months; **however, pursuant to 5G1.1(a), because the statutorily**

**maximum sentence is less than the minimum of the Guidelines range, the statutorily authorized maximum sentence of 48 months is the stipulated Guidelines sentence.**

The presentence report (PSR) that was issued by the probation department on June 30, 2008 contains the same calculation as the plea agreement. The PSR recommends a sentence of 48 months and one year of supervised release.

### III. Reasons to Impose a Lenient Non-Guideline Sentence

### A.  Sentencing Framework

After *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court must impose a sentence that is sufficient, but not greater than necessary, to effectuate the statutory purposes and facts set forth in § 3553(a). A sentencing court must both "consider Guidelines ranges" and "tailor the sentence in light of other statutory concerns as well." 543 U.S. at 245-26. In the words of the Second Circuit: "with the mandatory duty to apply the Guidelines excised, the duty imposed by §3553(a) acquires renewed significance." *United States v. Crosby*, 397 F.3d 103, 111 (2d Cir. 205).

The Supreme Court's recent sentencing decisions make it clear that any attempt to give special weight to the Sentencing Guidelines is contrary to its holding in *Booker*, which made it clear that the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are reasonable. *Gall v. United States*, 552 U.S. __, 2007 U.S. LEXIS 13083, *14 (Dec. 10, 2007); See also *Kimbrough v. United States*, 552 U.S. __, 2007 US LEXIS 13082,*___ (Dec. 10, 2007); *Rita v.  United States*, 551 U.S. ___, 127 S. Ct. 2456, 2465 (2007). In reviewing the reasonableness of a sentence outside the Guidelines range, the Court in *Gall* held that:

> Appellate courts may . . . take the degree of variance into account and consider
> the extent of a deviation from the Guidelines. We reject, however, an appellate

> rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

2007 U.S. LEXIS 13083, *16.

As explained in *Rita* and again in *Gall*, a district court should begin by correctly calculating the applicable Guidelines range. 551 U.S. at __, 127 S.Ct. at 2480; 552 U.S. at __, 2007 U.S. LEXIS 13083, *20. The district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guidelines range is reasonable. *Id.* at __, 2007 U.S. LEXIS 13083, *21.

Accordingly the Court in *Gall* held:

> He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

*Id.* at __, 2007 U.S. LEXIS 13083, *21.

## B. Combination of Factors Pursuant to §3553(a), Including:

### 1. Mr. Maldonado's History and Characteristics

As a result of the extreme poverty that Mr. Maldonado was born into, his siblings left home when they were 15 never to return. Because he was raised with nothing, Mr. Maldonado has worked very hard to make a life for himself in the United States. As mentioned previously, he worked three jobs at once in order to support himself and his children while he was living in Atlanta, Georgia with Fausta and their two boys.

Mr. Maldonado is committed to supporting his children in any way possible lawfully, and looks forward to being with Fausta and the boys when he has completed his incarceration.

### 2. The Nature and Circumstances of His Involvement

Mr. Maldonado's participation in the instant offense was limited in nature and responsibility. Mr. Maldonado played a minor role in the offense, which is why he pled guilty to using a telephone to facilitate the distribution of drugs. He was merely a middle man who was involved in the transportation of the drugs. Mr. Maldonado was not the owner of the methamphetamine, and he did not negotiate for the purchase of the drugs or pay for them.  Mr. Maldonado never gave orders to any other individuals in the conspiracy.

He regrets that he became involved with the people that were part of the instant offense. It was an isolated incident and Mr. Maldonado admits he had a lapse in judgment. He only wishes to return to Mexico.

### 3. Seriousness of the Offense

Mr. Maldonado recognizes and does not wish to minimize the seriousness of his offense. Nevertheless, it is worth noting that Mr. Maldonado is not guilty of a crime of violence, nor did he carry a weapon in carrying out the offense.

### 4.  Mr. Maldonado will be Deported After He Serves His Sentence

Mr. Maldonado is not in this country legally and he will be deported to Mexico when his sentence term is over.  In light of his deportable status, a lengthy term of imprisonment would amount to a tremendous waste of government assets.  Accordingly, this is a factor that weighs in favor of a lenient sentence.

### 5.  Need to Afford Adequate Deterrence to Criminal Conduct

Mr. Maldonado has clearly learned from his mistakes, and will not engage in this behavior again. The devastating consequences for not only Mr. Maldonado, but to his children, the mothers of his children, his parents, extended family, and friends have more than adequately deterred him from having any additional involvement in drugs. The risk of not being able to

spend his time caring for his children and being with his family and friends is sufficient to deter

Mr. Maldonado from being involved in this type of activity ever again.

### 6. Need to Protect the Public

There is no evidence to suggest that Mr. Maldonado is a danger to the public.

### 7. Mr. Maldonado's Support Network

Mr. Maldonado has the love and support of his children, family and friends. Those

closest to Mr. Maldonado are willing to do whatever they can to help him recover and rebuild his

life. They believe his incarceration would be of benefit to no one and would deny the

contributions of one who has so much to offer.

## IV. Conclusion

For the foregoing reasons, I respectfully request a sentence that is as lenient as possible.

Respectfully submitted,

/s/

Ellyn I. Bank

cc:     AUSA Jocelyn Strauber (via fax: 212 637-0086)